IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CIVIL ACTION NO. |
| | ) | |
| Plaintiff, | ) | JUDGE |
| | ) | |
| v. | ) | |
| | ) | |
| $49,000.00 IN U.S. CURRENCY, | ) | COMPLAINT IN FORFEITURE |
| | ) | |
| Defendant. | ) | |

NOW COMES plaintiff, the United States of America, by Justin E. Herdman, United States Attorney for the Northern District of Ohio, and Phillip J. Tripi, Assistant U.S. Attorney, and files this Complaint in Forfeiture, alleging on information and belief the following:

### JURISDICTION AND INTRODUCTION

1. This Court has jurisdiction over this in rem proceeding pursuant to 28 U.S.C. §§ 1345 and 1355, and 21 U.S.C. § 881.

2. This Court has venue in this matter pursuant to 28 U.S.C. § 1395.

3. The defendant $49,000.00 in U.S. Currency (hereinafter "defendant currency") was seized on August 9, 2016. The defendant currency is now in the possession of the federal government.

4. Subsequent to the seizure, the United States Customs and Border Protection (hereinafter "CBP") commenced administrative forfeiture proceedings against the defendant currency. A claim to the defendant currency was submitted in the administrative forfeiture

proceeding by Jibree L. Watson (hereinafter "Watson"), necessitating the filing of this judicial forfeiture action.

5. The defendant currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because it constitutes proceeds traceable to drug trafficking activities and/or was used or intended to be used to facilitate drug trafficking in violation of 21 U.S.C. §§ 841(a) and/or 846.

## FORFEITURE COUNT

6. On August 9, 2016, Watson was a ticketed passenger on a United Airlines flight departing Cleveland Hopkins International Airport and destined for Sacramento, California by means of a connecting flight.

7. On August 9, 2016, the Transportation Security Administration (hereinafter "TSA") screened a piece of checked luggage belonging to Watson which alerted for the presence of an organic bulk mass, which led them to conduct a hand search of the luggage.

8. During the hand search of the luggage, TSA discovered vacuum sealed bags in the lining of the luggage which appeared to contain large amounts of currency.

9. TSA referred the matter to a task force overseen by Homeland Security Investigations (hereinafter "HSI") for further investigation.

10. At 6:20 p.m., Watson was encountered in Concourse C of the airport, at which time an HSI agent identified himself to Watson and advised Watson that there was an issue concerning his checked luggage.

11. Watson agreed to accompany the agent and a Cleveland Police Division (hereinafter "CPD") officer to the HSI office located in the airport, where he agreed to be

2

interviewed.

12.     During the interview, Watson stated he was flying to San Francisco but did not know how long he would stay in California.

13.     Watson stated he was travelling alone and had no hotel reservations once he arrived in California.

14.     Watson acknowledged he had checked one suitcase with the airline when he arrived at the airport and was travelling with one additional small shaving-kit-sized carry-on bag.

15.     Regarding employment, Watson stated he is self-employed as a party planner and earns extra money under the table by helping his uncle fix houses.

16.     Watson stated he paid taxes last year but was not sure what earnings he claimed on his tax return.

17.     Watson explained that the purpose for his trip was to visit his father and to see several disc jockeys about throwing a party with the money he was transporting; however, he could provide no details.

18.     Watson admitted he had packed his own recently purchased suitcase; however, he was unsure of the amount of currency contained within it, estimating it to be $50,000.00.

19.     Watson stated he liked $100 denomination currency because it was small and easier to travel with.

20.     Watson claimed he kept the money in a safe at his house and that he had packed the suitcase at a friend's house, but again was unable to provide any other details, including the name of the friend and the exact location of the house.

21.     Watson consented to the search of his checked suitcase and the carry-on bag.

22. The HSI agent found the defendant currency hidden within the checked suitcase. The defendant currency consisted of $100 denomination federal reserve notes, which had been vacuum sealed and compressed into six separate packages. The packages were contained in two larger vacuum sealed packages which had been concealed in a false compartment underneath the zipper lining of the suitcase. The false compartment was not part of the manufacturer's design.

23. Other than the currency, the checked suitcase contained only a few items of clothing, a toothbrush and a pair of sunglasses.

24. The HSI agent found an additional $2,500.00 in U.S, currency and two flip cell phones during the search of the carry-on bag.

25. Watson did not know the phone numbers for those cell phones and claimed he was not using those cell phones.

26. Watson stated he had withdrawn the $2,500.00 in U.S. currency from his bank account, but could not produce a withdrawal slip or provide the exact location of the bank branch.

27. HSI seized the defendant currency.

28. HSI returned the $2,500.00 in U.S. Currency to Watson, in part, to facilitate his ability to travel to California.

29. Watson chose not to continue his travel to California with the airline.

30. It is a common practice for drug traffickers and drug couriers to conceal large amounts of currency in vacuum-sealed containers to avoid detection by law enforcement.

31.     It is a common practice for drug traffickers to pay a fee to drug and money couriers for transporting large amounts of currency, often providing the fee separate from the bulk currency the courier is transporting.

32.     It is a common practice for drug traffickers to transport currency and narcotics concealed in luggage by airline or other commercial transportation, and to utilize inexpensive cell phones as a means of communication with the courier upon arrival at the destination airport.

34.     Watson has a drug-related criminal history that includes a 2014 arrest in Tennessee for simple possession of marijuana and possession of drug paraphernalia.

35.     By reason of the foregoing, the defendant currency is subject to forfeiture to the United States pursuant to the statutory authority set forth in paragraph 5 hereof.

WHEREFORE, plaintiff prays that this Court enter judgment condemning the defendant currency and forfeiting it to the United States of America for disposition according to law and for such other relief as this Court may deem just and proper.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By:     _____
Phillip J. Tripi
Reg. No. 0017767
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
Phone: (216) 622-3769
Fax:    (216)522-7499
Phillip.Tripi@usdoj.gov

<u>VERIFICATION</u>

STATE OF OHIO    )
          ) SS.
COUNTY OF CUYAHOGA )

   I, Phillip J. Tripi, being first duly sworn, depose and say that I am an Assistant United States Attorney for the Northern District of Ohio, and one of the attorneys for the Plaintiff in this action. Under penalty of perjury I depose and say the foregoing Complaint in Forfeiture is based upon information officially provided to me and is true as I verily believe.

                 Phillip J. Tripi
                 Assistant U.S. Attorney

   Sworn to and subscribed in my presence this 2nd day of October, 2017.

                 Notary Public

**MELANIE KATE SANDS**
**Notary Public, State of Ohio**
**My Commission Expires May 6, 2020**